Mr. Massey, pleased to hear from you. Good morning. May it please the Court, my name is Wade Massey. I represent Power Fuels, who is the petitioner in this case. Your Honor, Power Fuels is a contractor for Virginia Dominion Power. It's a company that has 12 employees. They work at a site adjacent to Dominion's plant in Wise County, Virginia. Power Fuels, itself, does not mine any coal, it does not sell any coal, and it doesn't wash or clean any coal. The purchaser of the coal is Dominion. Dominion buys the coal from different producers and has it transported to this Power Fuels site. Power Fuels stores this coal in different piles for the different producers, one for each producer. And then, each day, Dominion tells Power Fuels what coal it wants out of each pile. Bring us two scoops, bucket loads, from this pile. Bring us three scoops from this other pile. Blend them together, put them on a truck, and haul them across the street. Mr. Massey, do you disagree with the ALJ's characterization of Power Fuels' work, that its activities included mixing, blending, weighing, sampling, storing, loading, and transporting coal to Dominion's power plant? If I followed all those verbs, I don't think so. I think it does each of those things. It receives the coal, it's unloaded at the site, it's sampled at the site, it's blended together at the site, pursuant to the specifications of Dominion, and it's reloaded and transported across the street. So all of those things do occur there. That's correct. Now, all of those things, of course, also occur at a great many other sites across the United States that are not mines. Every utility, every steel company, receives a blend of coals. Correct. But the issue, just to make sure I'm grasping the issue that we have to decide, is whether those activities meet the Mine Act's definition of the work of preparing coal. And that's, in a nutshell, is it not what we have to decide here? I agree entirely with that point. I think the question is whether under the statute that Your Honor is making reference to now, 802i, definition of work of preparing the coal, are all of those verbs that are listed in that statute, which we fall within those verbs, are they enough to subject us to Mine Act? Not the statute, you mean the ALJ finding? Well, I was referring to the statute itself that I think the ALJ was attempting to apply, which is the definition of work of preparing the coal, which has those same type words in it. So the question I think Your Honor is getting to, and I want to get to, is, is it enough for those things to be conducted by someone, or must there be some further limiting factor to those activities? And we suggest that there should be some further limiting activity, and the words themselves are built into the statute, into the last part. How far away is your plant from Dominion? It's immediately adjacent to Dominion property. All right, and they give you, how often do they give you the specifications for the kind of coal they want? Daily or more. Okay, so if, and the specifications vary a good bit from day to day, don't they? They do, Your Honor. I mean, it's, what you're doing is important work and demands a certain expertise, and if it, if it, if Dominion gives you specifications almost on a daily basis, and those vary, and you, and you prepare the coal to meet Dominion's specifications, why don't you fall right within the definition, which says the work of preparing coal, or all the minerals, you certainly prepare the coal, and includes custom coal preparation facilities, and if the specifications vary, and you meet the specifications, why wouldn't you be a custom coal preparation facility? Well, I think the limiting factor is in the statute itself, and it says, and such other work as is normally done by the operator of the coal mine. Now, the evidence in this case is that there are preparation facilities that coal miners operate, normally referred to as coal preparation plants, the function of which is to take a product, clean it, process it, perhaps mix it with other coals. But in, in, in earlier, in response to Judge Duncan's question, you mentioned that you did mix and store the coal, and those are, those are the very verbs listed in defining the word, the word work, or preparing the coal, and, and those are things that your client does. That's correct, that's entirely correct, and it's also work that every major consumer of coal does in the United States. They receive an inventory of coals, they mix them, they store them, they use them, they combust them, and they're not coal mines by doing that. If, if I may, your argument is not so much that you don't do those things, as I understand it. Your argument is that the sentence in 802I, as is usually done by the operator of the coal mine, means that not all mixing, storing, loading, et cetera, qualifies as preparation. Only those act, those activities only qualify if they're usually done by the operator of the coal mine. I think, is that the distinction that you're making? Precisely, Your Honor. And if I may, as a follow-up, that leads me to my next question, and that is, what is the standard of review? What deference, if any, do we owe to the agency that administers the act? Well, the most direct statement on that that I've located is in United Energy Services, a 1994 decision, wherein the court said, because the questions we address are matters of statutory interpretation, and the facts are essentially undisputed, true here, the standard of review is plenary. So, we suggest to you, Your Honor, that this is a matter of statutory interpretation. That it is a matter of law subject to de novo review, is that what you're saying? Yes, Your Honor. Even if it is subject to statutory, I mean, if it is purely a matter of law, why wouldn't such other work as is usually done by the operator of a coal mine stand independently of the verbs mixing and storing and blending? I mean, we have a number of canons of interpretation that would give independent significance to it, and why shouldn't that canon of interpretation, which gives independent significance to a phrase like this, why wouldn't that apply in the context of a statute where the list of verbs and things are clear that Congress intended comprehensive coverage? Congress really seems, when you read this statute, to want to include in the protections of this act people who were performing coal preparation activities of whatever sort, because they might be exposed to the same dust and pulmonary hazards that coal workers were. So, when you look at the definition of work, you get the idea that Congress wanted pretty comprehensive coverage, not something that's a patchwork that leaves gaps. I understand your point, and I think the decision that the court needs to make is, are those words mixing, loading, storing, in and of themselves, enough? And we're going to put aside the remaining language as is usually done by the operator of a coal mine. That's one possibility, I'll grant you. If you take that possibility, though, you're taking a mine act definition and applying it to just about any user or consumer of coal, because they all receive it, load it, unload it, mix it, store it, and combust it. Yes, except for the fact that we're dealing with not just any consumer of coal, but with a facility here that's preparing coal to customize specifications. I wouldn't agree that they're preparing this coal. None of this coal quality is being adjusted in any way. These are simply finished products. If you're blending the coal, you're preparing it for the Dominion's final use. Well, prepare perhaps in the sense of getting ready to, but I don't believe prepare in the sense of coal preparation. Coal preparation means you're doing something to the coal to improve the quality of it. You're removing the impurities from the coal. You're trying to get a more enhanced product to use by doing those things. That's coal preparation. They're coal preparation plants. Some of this coal goes through sophisticated coal preparation plants before it ever even comes to power fields. It can be more than one person that helps prepare the coal. Certainly. That's certainly a possibility, but it's different. We submit, and based on the evidence, it's different to blend coal for combustion at a site, which is what's done here, versus taking perhaps raw coal, run-of-the-mine coal, removing impurities, processing it, crushing, sizing, breaking the coal, getting it to a set of specifications, or resale. Help me understand. I think this goes back to my problem. You say that coal, your argument is, I think, that coal preparation is a term of art that has a particularized meaning in this context. Because, as Judge Wilkinson pointed out, the activities, blending, weighing, sampling, would look to the uninformed like preparation. So what is the source of your understanding that preparation means something different? And if it is unclear, why would we not defer to the interpretation of the regulatory agency? Well, I'm not sure the regulatory agency is ever given an interpretation of this statute. Well, for our purposes, they have. They've come and given a litigating position here before the court, which may be entitled to respect and acknowledgement by this court, but it has to have a power to persuade to have any weight. Following up on Judge Duncan's point about the deference, isn't the secretary here in charge of sort of demarcating the boundaries between OSHA on the one hand and MSHA on the other? I mean, the secretary is dealing with these problems every day. And, of course, there are some interesting questions as to where MSHA leaves off and OSHA begins. But whether it's full Chevron to deference or not, wouldn't we accord some respect to the secretary's position on a matter of this nature, even if it's only a litigating position, would be something you'd want to listen to, wouldn't it? If I may finish? Yes, please do. I think on the pure interpretation of the statute, which is, I think, where we start and end in this case, that that's a de novo legal question for the court. Now, if you go beyond that and get into policies or litigation positions, are they entitled to some deference? I think the cases say they are, that there is some deference given to that, but it's not really Chevron deference. It's a Skidmore-type deference that the court looks at that and decides whether it has the power to persuade. All right. Thank you very much, sir. Yes. Ms. Burnett, I'm happy to hear your side of it. Absolutely. Good morning. May it please the court, Tamara Hoff-Leiser for the Secretary of Labor. Ms. Burnett, I'm sorry. I am sorry to do this. And wherever you wish, if you would, if you're coming to it anyway, don't come to it out of order, but I am wrestling with this issue of the standard of review. So if you would incorporate that into your argument, I would appreciate it. Certainly. I would like to discuss three points this morning. First, that the court can decide the issue presented on the plain language of the Mine Act. Second, that it can decide the case before it on the basis of its existing Mine Act precedent. And third, if the court does find that the statutory language is ambiguous, that deference is so to the Secretary's reasonable interpretation of the Mine Act. Turning to the first point, this case can be decided on the plain language of the Mine Act. Congress created a very broad definition of what constitutes a mine. Such a definition extends beyond the mere extraction of coal. And the Mine Act defines a mine as the worker preparing the coal and includes a custom coal preparation facilities. The worker preparing the coal includes enumerated preparation functions, such as drying, cleaning, washing, mixing, storing, and loading of coal, and it includes a catch-off race and such other work of preparing the coal, as is usually done by the operator of the coal mine. This case is therefore very simple. Power Fuels performs several of the functions listed as constituting work of preparing the coal, namely mixing, storing, and loading of coal. And it performs these functions specifically to supply Dominion with the fuel it requires, pursuant to Dominion-specific requirements. Thus, because Power Fuels performs the enumerated functions to meet customer specifications, Power Fuels is a custom coal preparation facility, therefore it engages in the work of preparing the coal, and so it is a mine. The Secretary's interpretation is consistent with the, not only with the plain language of the statute, but the statutory purpose, which is to protect individuals who are engaged in the work of preparing the coal and may be exposed to such hazards as Your Honors have cited to before, such as coal dust in the air. Why don't you get back to Judge Duncan's question about what you think the standard of review is. I think we understand these other two arguments that you're making, and we've touched on them ourselves. Get back to the question she asked you. Certainly. The Secretary's position in this case is entitled to Chevron deference for a number of reasons. The first is that in Martin v. Osherick, the Supreme Court found that the Secretary's interpretation of Osherick regulations are entitled to Chevron deference. And the court reasoned that the Secretary's act of litigating before the commission is agency action, not a post hoc rationalization of it. And the Supreme Court in that instance relied on the fact that the Secretary operates under a split enforcement scheme under the Occupational Safety and Health Act. And that same split enforcement scheme appears in the Mine Act. In Martin, the court recognized that the Secretary has all of the interpretation and enforcement and policymaking authority under the Osh Act, and the same is true under the Mine Act, whereas the commission has the adjudicatory functions and acts like a court, so it does not have the policymaking authority. And so it is the Secretary that is sort of the interpretation under these split enforcement schemes. Since Martin v. Osherick, this court has decided in a number of instances that Martin v. Osherick applies both to the Mine Act context and to the Secretary's interpretation of the Mine Act specifically. For instance, in Mutual Mining, this court applied Martin to the Mine Act and granted Chevron deference to the Secretary's interpretation of the Mine Act, advanced in litigation, and found that the interpretation was indeed reasonable in that. And that's true in any respect. It's interesting because these administrative law questions about the level of deference can be massaged and massaged, and the question is, is it Chevron deference or is it Skidmore deference or is it something? Maybe it's just best to say, whatever it is, it deserves respect, simply because you're the one that's dealing with this day after day. We do have these questions that present issues as to what the exact scope of coverage of OSHA is and how they apply here. To be very simplistic about it, this seems to me to be very, very coal-related. And to actually take a company that engages in the mixing, blending, and storage of coal and say that it's somehow beyond the purview of the Mine Safety Act, that wouldn't strike people as commonsensical. I look at some congressmen who help draft and sponsor this legislation, and they say, what? You've got this company engaged in preparing coal according to specified orders and mixing it and storing it and blending it, and you're telling me this is outside of the Mine Safety and Health Act? It won't stand up. I mean, that's the nub of it. It's a very broadly written statute, just textual. They didn't want to leave anything out. I think the answer to that is just yes. Yes, Your Honor. The Secretary believes that not only is his interpretation entitled to respect, but his interpretation is correct. So his interpretation would stand under either Chevron or Skidmore or no deference because the interpretation is correct based on the plain language of the statute. But, Counsel, wouldn't you agree that you don't have to get to deference at all here, that what Congress said is clear, and that the rule, the standard of review is substantial evidence for the right, and they've conceded they do everything that they said they did? That's correct, Your Honor. The Secretary does believe that this matter can be decided on the plain language of the statute because the statute is clear by enumerating certain functions that Congress understood to be the work of preparing the coal, and Power Fuels does engage in those functions. It does so to meet customer specifications and to prepare the coal for a domain of specific use, and for that reason, Your Honor, is correct that the plain language of the statute does govern in this case. If I could follow up a little bit on Judge Gregory's question, and I'm sorry I forgot to ask Mr. Massey, the phrase on which Power Fuels relies and such other work of preparing such coal, as is usually done by the operator, isn't really a limiting phrase. It's an expanding phrase. It adds on to the list. It doesn't appear to seek to delimit it in any way. I imagine that would be your take on it as well. Yes, Your Honor. The last phrase of the definition of the work of preparing the coal, we understand to simply be a catch-all provision to incorporate any other functions that may be the work of preparing the coal that Congress simply did not envision at the time of the drafting. Counsel, I'm going to ask my co-panelists if they have any further questions of you, so hold on a minute. Certainly. None of the three of us have any further questions. Thank you. Thank you very much. Thank you. Mr. Massey, you have some rebuttal time, sir. Let me go directly to your point, if I may, and I think it's the panel's point that's been raised in several questions, is that is any mixing, loading, storing enough? Is that what Congress intended? Now, if your answer is yes, then we lose because we do those things. But if it requires something else, then someone needs to tell us what else is. What is the limiting factor? Because there are facilities all over the country that receive coal, that load coal, that store coal, and no one has thought of them as being coal mines. This court's own precedent in Epilon dealt with a barge loading facility. They received coal. They stored coal. They loaded coal. They did all of those things. This court said that's not a mine. The Eighth Circuit's decision is very close to this case. It involves a plant that received coal and mixed it and got it ready to combust, and then they used it. And the court said, no, this is not a coal mine. This is not what Congress intended. There has to be a line drawn, and the secretary has never stated where that line is. Today, they just said there is no line. It's any of those words in the statute. If you do any of them, and then you might do the last one too, it's any one of those or all of them. I submit to you that's a fundamental change in the way this act has been interpreted to this point. But you have the opposite problem because what you actually seem to want to do is to confine the reach of the statute to the actual extractive activities that a coal mine operator does. I mean, you want to say that the only entity to which this statute applies is to the operator of a coal mine actually extracting the coal from the ground. And with all respect, I do appreciate your argument, but that is not the way the statute is written, and I don't know. You say, well, the secretary doesn't have a limiting principle. Well, you have a limiting principle, all right, but it's so limiting it's going to virtually read the act out of existence or at least cut off about two-thirds of it. That is not our position, though, Judge. Well, I know you don't want to say it, Judge. No, no. I mean, we've never said it's limited to extractive activities. There are plenty of coal preparation plants. You've probably seen them, been to them. I have. They do a certain set of functions. They get coal. They clean coal. They prepare coal to some general set of specifications. But in the course of your arguments, you've never said to me these workers are not exposed to the hazards that attach to all of our pulmonary functions from dealing with coal. I mean, coal, we know this from a succession of statutes that Congress has passed dealing with black line and dealing with coal mining activities, that there are dangers here pertaining to safety. There are dangers here pertaining to human health. And we've had a very interesting argument, but not at one point have you said these workers are exposed to none of it. There are no health hazards of any sort here that are associated with coal. Maybe you think that's a policy argument. No. No, I understand your point, and it's well taken. But people that use coal, that mix coal, that consume coal, that combust coal, they have some element of hazard in those activities as well. But they've never thought that that was a coal mine. And just because you have some element of exposure to coal doesn't mean you're a coal mine. The epilogue decision of this court said that you don't have a black line claim if it involves a loading facility or a barge system. I mean, they were exposed. They were exposed to coal. But the whole point of this statute was, I mean, they could have just covered all of this under OSHA, but they didn't. And the entire point of the statute was that coal mining carries special and unique hazards to the lungs, to people breathing. And as a result, we want a specialized statute covering this, which is tailored to the hazards of a particular industry. You know, you can quarrel with that judgment, but that's what Congress said, that general safety precautions, some industries have specific problems, and we're going to address those with a more precisely tailored statute. And that's what's happening here. And if I may answer that one question, and I'll retire or try to, I think you used the word industry. Yes, the industry. And I think that's the question. What is the industry here? Is the industry the mining industry that we're dealing with, or is this a utility industry? And I submit to you, this is a utility that buys an inventory of products and decides how it wants to burn them. And if they had done this themselves at their own plant, we wouldn't even be here today. There'd be no citation. But this is a contractor, and it does it next door and hauls it across the street, and all of a sudden we're a coal mine. So we'd ask the court to vacate the citations, grant our petition and vacate the citations in this case. Thank you. Thank you, Mr. Massey. And we'll come down and recouncil and take a very brief recess.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Allyson K. Duncan